IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**HEATHER KOWITZ**,

        Plaintiff,

v.

**CITY OF PORTLAND**,

        Defendant.

Case No. 3:16-cv-00598-SI

**OPINION AND ORDER**

David H. Griggs, GRIGGS LAW GROUP PC, 4900 SW Griffith Drive, Suite 165, Beaverton, OR 97005. Of Attorneys for Plaintiff.

Anne M. Milligan and Ryan C. Bailey, Deputy City Attorneys, PORTLAND CITY ATTORNEY'S OFFICE, 1221 SW Fourth Avenue, Suite 430, Portland, OR 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      As alleged in her Amended Complaint, Plaintiff, Heather Kowitz, asserts two claims against Defendant, City of Portland. For her first claim, Plaintiff alleges disability discrimination in violation of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. For her second claim, Plaintiff alleges unlawful retaliation in violation of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000(e)(3).[1] Before the Court is Defendant's motion for partial summary judgment against Plaintiff's claim of disability discrimination under the ADA. For the reasons stated below, Defendant's motion is granted.

## STANDARDS

### A. Summary Judgment

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

### B. Discrimination under the ADA

Title I of the ADA prohibits discrimination based on disability against qualified individuals in the terms and conditions of their employment. 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual on the basis of a disability in regard to job

---

[1] The Court previously granted partial summary judgment against Plaintiff's state claims. ECF 33.

application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."). The plaintiff has the burden of establishing a *prima facie* case of disability discrimination. *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012). To establish a *prima facie* case of disability discrimination under the ADA, a plaintiff must show the following: "(1) he [or she] is a disabled person within the meaning of the statute; (2) he [or she] is a qualified individual with a disability; and (3) he [or she] suffered an adverse employment action because of his disability." *Mayo v. PCC Structurals, Inc.*, 795 F.3d 941, 944 (9th Cir. 2015) (quotation marks omitted); *Samper*, 675 F.3d at 1237.

Courts apply the *McDonnell-Douglas*[2] burden shifting analysis to claims under the ADA. *Curley v. City of N. Las Vegas*, 772 F.3d 629, 632 (9th Cir. 2014). Thus, if a plaintiff presents a *prima facie* case of disability discrimination, the burden shifts to the defendant to demonstrate a "legitimate, nondiscriminatory reason for the adverse employment action." *Id.* After the defendant shows a legitimate reason for the employment action, the burden shifts back to the plaintiff to prove that the defendant's purported reason is merely pretext. *Id.*

## BACKGROUND

Plaintiff began work for Defendant as a journeyman electrician in November 2013. On August 15, 2014, Plaintiff orally complained to the Defendant's Human Resources department that she experienced discrimination because of her gender, sexual orientation, and status as a veteran. Defendant's employee Elizabeth Lopez investigated Plaintiff's complaints. Ms. Lopez interviewed Plaintiff on several occasions and interviewed eighteen of Plaintiff's coworkers.

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

Throughout the fall of 2014, Plaintiff's supervisors received several complaints about Plaintiff's "odd" behavior. In early October 2014 she had a negative interaction with her superior Steve Townsen, Chief Engineer, and was placed on paid administrative leave for the remainder of the day. She reported believing he was an "intern." Additionally, her coworkers claimed that she walked straight at people without moving to the side, made animal-like grunting noises, walked in circles, yelled at a coworker over the phone in the middle of the night, and, on October 15, 2014, pointed her fingers at a coworker in the shape of a gun and gestured as if Plaintiff was pulling the trigger. Mr. Townsen and Ms. Lopez met with Plaintiff on October 16, 2014 to discuss her "odd" behavior, including the finger-gun incident. Effective October 17, 2014, Plaintiff was placed on paid administrative leave.

Defendant also required that Plaintiff attend a "fitness for duty" psychological evaluation with Dr. Suzanne R. Best before returning to work. Dr. Best submitted her report on November 24, 2014. Dr. Best's psychological evaluation of Plaintiff indicated that Plaintiff was fit for work and not disabled, but would benefit from working in collaboration with others and working under a different supervisor. On December 17, 2014, Ms. Lopez reported her findings regarding Plaintiff's discrimination claims, concluding that Plaintiff's complaints were unsubstantiated.

Plaintiff returned to work from administrative leave on January 2, 2015. Defendant did not implement Dr. Best's recommendations. Shortly after Plaintiff's return, Defendant gave Plaintiff notice of a proposed 40-hour suspension. The proposal charged Plaintiff with violating Defendant's policies, including engaging in offensive conduct, insubordination, dishonesty, and physical violence. Defendant told Plaintiff that these charges were based on reports of Plaintiff's "odd" behavior and purported insubordination with Mr. Townsen that occurred before Plaintiff's

administrative leave. Plaintiff responded in writing to the charges and disputed Defendant's interpretations of her actions. Plaintiff attended a "due process" meeting on January 7, 2014 with her supervisors, Ms. Lopez, and Plaintiff's union representative. Defendant then suspended Plaintiff from working, without pay, February 3-9, 2015.

Throughout January and February 2015, Plaintiff's supervisor Dan Passmore filed several reports, stating that Plaintiff was insubordinate, had poor job performance, and inflated her reporting of time worked. Plaintiff responded in writing to Defendant's charges, disputing their accuracy. On February 10, 2015, Defendant placed Plaintiff on paid administrative leave, pending the investigation into her job performance. On March 11, 2015, Mr. Townsen held a "due process" meeting with Plaintiff and Ms. Lopez. Mr. Townsen concluded that Plaintiff had violated various portions of the City Code, including provisions relating to incompetence, negligence, insubordination, and dishonesty. Defendant terminated Plaintiff's employment effective March 24, 2015.

## DISCUSSION

In its motions for partial summary judgment, Defendant argues that Plaintiff failed properly to assert her termination as an adverse employment action related to alleged disability discrimination in her BOLI complaint, and thus failed to exhaust her administrative remedies. Defendant also argues that Plaintiff's disability discrimination claim fails as a matter of law because she cannot establish any of the three elements of a *prima facie* case, and, even if she can, Defendant had legitimate nondiscriminatory reasons to terminate Plaintiff's employment. Plaintiff responds that she suffers from depression and alcoholism that substantially limit Plaintiff's major life activities of working and interacting well with others, that she had a record of such disabilities, and that Defendant regarded Plaintiff as having a mental impairment. Plaintiff also states that Defendant's reasons for terminating Plaintiff's employment are pretext.

PAGE 5 – OPINION AND ORDER

Plaintiff adds that requiring her to undergo a mental health fitness evaluation independently violated the ADA.

Viewing the facts in the light most favorable to Plaintiff, she fails to present a genuine issue that she was actually disabled because Plaintiff's impairments do not substantially limit a "major life activity," as that phrase is used in the ADA. Plaintiff also fails to present a genuine issue that any "record" of Plaintiff's disability played any role in Defendant's actions. Further, Plaintiff fails to present a genuine issue on her "regarded as" theory of disability discrimination. Plaintiff concedes that her ability to interact with coworkers is impaired and that an essential function of her position requires her to interact well with her coworkers. Thus, Plaintiff fails to present a genuine issue that she is able to perform the essential functions of her job without accommodation. Accordingly, Plaintiff is not a "qualified individual" under her "regarded as" theory of disability discrimination. Moreover, the Court finds that under the circumstances of this case, Defendant requiring Plaintiff to undergo a fitness for duty evaluation did not violate the ADA.

**A. Failure to Exhaust Administrative Remedies**

Before a plaintiff may bring a claim under the ADA, she must first exhaust her administrative remedies by filing a timely charge with the Equal Employment Opportunity Commission ("EEOC") or the appropriate state agency. 42 U.S.C. § 12117(a) (adopting Title VII remedies and procedures for implementing the ADA); *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002) (describing exhaustion requirements under Title VII). In Oregon the appropriate state agency is the Bureau of Labor and Industries ("BOLI").

A federal district court only has subject matter jurisdiction "over all allegations of discrimination that either 'fell within the scope of the EEOC's *actual* investigation or an EEOC investigation which *can reasonably be expected* to grow out of the charge of

PAGE 6 – OPINION AND ORDER

discrimination.'" *B.K.B.*, 276 F.3d at 1100 (quoting *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994)) (emphasis in original). Although the EEOC charge should be liberally construed, the claims in the civil complaint must at least be "like or reasonably related to the allegations contained in the EEOC charge" and consistent with the plaintiff's original theory of the case. *Id.* (quoting *Green v. L.A. Cnty. Superintendent of Schs.*, 883 F.2d 1472, 1475-76 (9th Cir. 1989)) (quotation marks omitted).

Plaintiff filed three separate complaints with BOLI during Plaintiff's period of employment with Defendant. Plaintiff asserts that after each complaint, Defendant's discriminatory and retaliatory treatment against her worsened. Plaintiff filed her first BOLI complaint on September 19, 2014, alleging discrimination based on gender and sexual orientation. BOLI dismissed this complaint for lack of evidence but issued a "right to sue" letter on October 17, 2014. The EEOC adopted BOLI's findings. Plaintiff filed her second complaint with BOLI on January 20, 2015, alleging discrimination based on sexual orientation and perceived disability, and retaliation for reporting discrimination based on gender and sexual orientation. BOLI closed this complaint on January 20, 2016, after Plaintiff informed BOLI that she intended to go to Court. BOLI issued a "right to sue" letter on that date. On June 15, 2016, at Plaintiff's request, BOLI issued a second "right to sue" letter on Plaintiff's 2015 complaint. Plaintiff filed her third complaint with BOLI on January 14, 2016, alleging discrimination based on gender and sexual orientation, and retaliation. BOLI declined to investigate the charge, closed the complaint file, and issued a "right to sue" letter on January 15, 2016. On January 20, 2016, BOLI sent Plaintiff another "right to sue" letter on Plaintiff's 2016 complaint.

Defendant argues that Plaintiff has failed to exhaust her administrative remedies because Plaintiff did not include her employment termination as an adverse employment action in

her 2015 BOLI complaint. Instead, Defendant asserts, Plaintiff only included that adverse employment action in her 2016 BOLI compliant, but she did not assert disability discrimination under the ADA in that complaint.

In Plaintiff's 2015 BOLI complaint, Plaintiff stated that Defendant improperly placed her on administrative leave and suspension, improperly required a "fitness for duty" examination, and intentionally compiled false and damaging information about her, all to her detriment. Although Defendant had not yet terminated Plaintiff's employment when she filed her 2015 complaint with BOLI, the termination of her employment is reasonably related to the allegations contained in Plaintiff's 2015 complaint. A BOLI investigation of Plaintiff's termination can be reasonably expected to grow out of the allegations made in Plaintiff's 2015 BOLI complaint because it relates to the disciplinary actions asserted by Plaintiff in that complaint as being improperly made by Defendant. Thus, Plaintiff has sufficiently exhausted her administrative remedies.

**B.** *Prima Facie* **Case**

    **1. "Disabled" Under the ADA**

The ADA defines "disability" as a "physical or mental impairment that substantially limits one or more major life activities . . . a record of such an impairment . . . or . . . being regarded as having such an impairment." 42 U.S.C. §§ 12102(1)(A)-(C). Disability "shall be construed in favor of broad coverage." 42 U.S.C. § 12102(4)(A). Further, "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D).

        **a. Actual Disability**

An impairment is a disability within the meaning of the ADA if it "substantially limits the ability of an individual to perform a major life activity as compared to most people in the

PAGE 8 – OPINION AND ORDER

general population." 29 C.F.R. § 1630.2(j)(1)(ii). Plaintiff contends that her depression substantially limits the major life activities of working and interacting well with others.[3] Plaintiff, however, has failed to present a genuine dispute on whether she has a substantial limitation that qualifies as a disability under the ADA.

Plaintiff exhibited symptoms of major depression in her late teens and came to self-medicate with alcohol by the age of 17. She entered a residential treatment program for her alcoholism and became fully sober within three years. In her early twenties, Plaintiff's depression relapsed. She began to take anti-depressant medication and routinely attended therapy sessions. Her depression subsided within six months. Plaintiff sought therapy due to relationship-related depression in 2003 for a period of two to three months. Plaintiff's depression was in remission and asymptomatic until August 2014 when working for Defendant began to cause her stress. By November 2014, Plaintiff attended daily therapy sessions and took anti-depressant medication.

Plaintiff asserts that when her depression resurfaced, it triggered her inability to interact with others and thus to work. Plaintiff argues that, based on all of the evidence presented by Defendant, it is obvious that Plaintiff is substantially limited in the major life activity of interacting with others. Plaintiff further argues that the evidence shows that she could not successfully interact or communicate with many of her coworkers and supervisors due to her psychological impairment.

The Ninth Circuit considered a case presenting similar facts in *Weaving v. Hillsboro*, 763 F.3d 1106, 1112 (9th Cir. 2014). The plaintiff in *Weaving* alleged that his psychological

---

[3] Plaintiff also asserted alcoholism as a basis for actual disability. The undisputed evidence, however, shows that Plaintiff has successfully remained sober since the age of 20. Thus, her alcoholism has not substantially limited a major life activity for Plaintiff for many years.

impairment of attention deficit and hyperactivity disorder ("ADHD") substantially affected his ability to work and to interact with others and thus constituted an actual disability. 763 F.3d at 1112. He demonstrated significant interpersonal problems with coworkers "throughout his professional life." *Id.* at 1113. The defendant placed him on paid administrative leave and conducted an investigation of his interpersonal skills. *Id* at 1110. His coworkers described him as "tyrannical, unapproachable, noncommunicative, belittling, demeaning, threatening, intimidating, arrogant and vindictive." *Id.* The defendant required that the plaintiff complete a fitness for duty evaluation, which revealed he was fit for duty. *Id.* The defendant nevertheless terminated the plaintiff's employment. The case went to trial, and the jury returned a verdict for the plaintiff. *Id.* at 1111.

The Ninth Circuit, however, reversed the trial court's denial of the employer's motion for judgment as a matter of law. *Id.* The court found that the plaintiff's ability to interact with others did not infect all areas of his life and thus did not rise to the level of a substantial limitation. The court distinguished Mr. Weaving from plaintiffs who are "so severely impaired that they were essentially housebound," are "barely functional," "suffer from a total inability to communicate at times," "avoid[] contact with others, even members of [their] family, and [have] difficulty even carrying on conversations over the telephone." *Id.* To be actually disabled under the ADA, according to the Ninth Circuit, a plaintiff must show that his or her impairment substantially limits an ability to *interact* with others, not just *get along* with others. *Id.* at 1113. Trouble getting along with coworkers or supervisors, standing alone, is insufficient. *Id.* at 1114. Additionally, "[o]ne who is able to communicate with others, though his communications may at times be offensive, 'inappropriate, ineffective, or unsuccessful,' is not substantially limited in his ability to interact with others within the meaning of the ADA." *Id.*

Regarding Mr. Weaving's ability to work, the Ninth Circuit considered the evidence of his technical competence and concluded that he did not show that his ability was limited in comparison to most people in the general population. *Id.* at 1112. The Ninth Circuit emphasized that the only evidence the plaintiff "presents regarding ADHD's effects on his ability to work pertains to his interpersonal problems." *Id.* Because no evidence was presented that the plaintiff's ADHD affected his ability to work, and the court found the evidence insufficient to support a substantial impairment on the ability to interact with others, the Ninth Circuit found this claim to fail as a matter of law. *Id.*

Based on the Ninth Circuit's analysis in *Weaving*, no reasonable juror could conclude that Plaintiff's depression substantially limited her ability to interact with others or to work. Plaintiff has exhibited difficulty in getting along with others only while working for Defendant. She reported to Dr. Best that had not been formally disciplined or reprimanded in any prior employment position.[4] Indeed, she told Dr. Best that she could have stayed working with a former employer "for 30 years" if she had wanted. Further, she does not show that her depression adversely affects relationships with individuals in her personal life. To the contrary, Plaintiff sustained several long-term relationships throughout her adulthood. Plaintiff's evidence does not present a genuine issue on the question of substantial limitation. *See Weaving*, 763 F.3d at 1106; *see also* Ninth Cir. Civ. Jury Instr. 12.4 (2017) ("Difficulty getting along with others is not enough. A plaintiff must show that [his] [her] interactions with others were characterized on a regular basis by severe problems such as consistently high levels of hostility, social withdrawal

---

[4] Indeed, Plaintiff's positive history of prior employment is better than that of the plaintiff in *Weaving*, who had a record of poor interactions throughout his employment history, including with prior employers.

or failure to communicate when necessary."). Thus, no reasonable juror could conclude that Plaintiff's depression substantially limited her ability to work.

Like the plaintiff in *Weaving*, Plaintiff also attempts to show a limited ability to work solely based on her difficulty in getting along with others. Plaintiff's supervisors complain about her technical competence, which is unlike in *Weaving*, where the plaintiff's supervisors praised his competence. Plaintiff, however, disputes the accuracy of her supervisor's complaints. Plaintiff asserts that she is technically proficient and that her only issue is her problems interacting with others. That factual issue, however, is irrelevant, because there is no evidence or argument by Plaintiff that any technical inaptitude is caused by her alleged disability. As in *Weaving*, Plaintiff's only argument is that her inability to work is caused by her inability to interact with others. Thus, this argument fails just as it did in *Weaving*.

### b. Record of a Disability

"An individual has a record of a disability if the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k). Because Plaintiff's impairments do not substantially limit a major life activity, any record of such impairments do not show disability.

### c. "Regarded as" Disabled

A person is regarded as having an impairment, as defined by the ADA, if the person establishes that "he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). The "regarded as" provision does "not apply to impairments that are transitory and minor." 42 U.S.C. § 12102(3)(B). The implementing regulations of the ADA explain:

> (1) Except as provided in § 1630.15(f), an individual is "regarded as having such an impairment" if the individual is subjected to a prohibited action because of an actual or perceived physical or mental impairment, whether or not that impairment substantially limits, or is perceived to substantially limit, a major life activity. Prohibited actions include but are not limited to refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment.
>
> (2) Except as provided in § 1630.15(f), an individual is "regarded as having such an impairment" any time a covered entity takes a prohibited action against the individual because of an actual or perceived impairment, even if the entity asserts, or may or does ultimately establish, a defense to such action.
>
> (3) Establishing that an individual is "regarded as having such an impairment" does not, by itself, establish liability. Liability is established under title I of the ADA only when an individual proves that a covered entity discriminated on the basis of disability within the meaning of section 102 of the ADA, 42 U.S.C. 12112.

29 C.F.R. § 1630.2 (2012).

In the months before Defendant placed Plaintiff on paid administrative leave and required Plaintiff to submit to a "fitness for duty" examination, Plaintiff's problems with her coworkers escalated. Plaintiff's coworkers told her supervisor that Plaintiff was "crazy" and "insane," refused to work with her, and asked for reassignment. In October 2014, Ms. Lopez interviewed one of Plaintiff's supervisors, Gabriel Javier, during an investigation of Plaintiff's complaints. Mr. Javier stated:

> Well, like one of the electricians told me, you know, how do you fix somebody or communicate with somebody that is insane. I said, I reminded him that we are not medical professionals. We are not trained to make that kind of judgment call, but we all agree that she could use an evaluation as far as her psychic goes.…I believe everyone because of the fear don't want to work with her now. They think that—because they think she is crazy. Plain and simple. You know, we are not equipped to deal with that. None of our past training in construction had to deal with that kind of a person[.]

Defendant placed Plaintiff on administrative leave on October 17, 2014, and required her to complete a "fitness for duty" psychological evaluation with Dr. Best before returning to work.

On November 13, 2014, Ms. Lopez emailed Dr. Best and asked if Plaintiff was disabled. Dr. Best submitted her report to Defendant on November 24, 2014, concluding that Plaintiff was fit for work and not disabled. Defendant, however, did not bring Plaintiff back to work until January 2, 2015, after receiving a demand from Plaintiff's attorney. Within one month of Plaintiff's return to work, her supervisor filed several reports of her unsatisfactory job performance. Defendant placed Plaintiff on administrative leave on February 10, 2015, pending investigation of her job performance. Defendant terminated Plaintiff's employment effective March 24, 2015.

An employer's decision to require a "fitness for duty" examination does not alone establish that the employer regarded the employee as disabled under the ADA. *See Magdaleno v. Wash. Cty.*, 277 F. App'x 679, 681 (9th Cir. 2008) ("That the County was aware of Magdaleno's PTSD diagnosis, required him to submit to a psychological evaluation, and took steps to accommodate his PTSD, is insufficient to create a triable issue of fact on the 'regarded as' prong."); *see also Pena v. City of Flushing*, 651 F. App'x 415, 421 (6th Cir. 2016) ("Given that the ADA allows employers to condition employment based upon these examinations even after the 2008 Amendments, we decline to impose per se liability under the 'regarded as' provision in this circumstance.").

Although there is little case law in the Ninth Circuit that addresses what facts are needed to find that an employer "regarded" an employee as disabled after the ADA Amendments Act

of 2008,[5] there is some discussion in a recent unpublished decision, *Baker v. Roman Catholic Archdiocese of San Diego*, 725 F. App'x 531 (9th Cir. 2018). The defendant in *Baker* refused to renew an employment contract after the plaintiff, a teacher, suffered a concussion and experienced recurring headaches and dizziness. *Id.* at 532. The court concluded that because the defendant knew the plaintiff had suffered a concussion, knew the plaintiff continued to suffer headaches and dizziness, had expressed concern about the plaintiff's health immediately after the concussion, and asked the plaintiff about her health from time-to-time, a reasonable juror could find that the defendant regarded the plaintiff as having an impairment. *Id.* Thus, the Ninth Circuit found that there was a genuine dispute of material fact as to whether the defendant regarded the plaintiff as disabled. *Id.*

Similar to *Baker*, the facts in this case, viewed in the light most favorable to Plaintiff, show a genuine dispute as to whether Defendant regarded Plaintiff as having a mental disability. The following facts support a finding that Defendant regarded Plaintiff as disabled: Defendant learned that Plaintiff's coworkers called her "crazy" and "insane"; Defendant required Plaintiff to undergo a "fitness for duty" exam; Ms. Lopez specifically asked Dr. Best if Plaintiff was disabled; Defendant did not promptly reinstate Plaintiff after receiving Dr. Best's report that concluded Plaintiff was not disabled and was fit for work; Defendant put Plaintiff on paid administrative leave while she underwent her examination; Defendant also put Plaintiff on unpaid administrative leave shortly after reinstating her from her paid leave; and Defendant's

---

[5] Before the relevant amendment, a plaintiff had to prove that an employer regarded the plaintiff both as disabled and substantially limited in a major life activity. *See, e.g.*, *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1006 (9th Cir. 2007). The ADA Amendments Act of 2008 eliminated the requirement that an employer had to regard the plaintiff as substantially limited in a major life activity.

coworkers, some of whom had expressed concerns about Plaintiff's mental stability, began documenting Plaintiff's infractions, which soon led to the termination of her employment.

Defendant argues that it could not have regarded Plaintiff as disabled after receiving Dr. Best's report concluding Plaintiff was not disabled. Despite the results of Dr. Best's report, Defendant may still have regarded Plaintiff as disabled. A reasonable juror could conclude that even after reading this report, Ms. Lopez and others may still have personally regarded Plaintiff as disabled. Reading the report does not forgo any question of fact as to the perceptions held by those involved in Plaintiff's termination. Additionally, bias may be imputed to Defendant under a "cat's paw" theory. *See Poland v. Chertoff*, 494 F.3d 1174 (9th Cir. 2007) (holding that a subordinate's bias is imputed to the decisionmaker if the plaintiff can show the adverse employment action was not independent of the subordinate's bias). It remains unclear if anyone other than Ms. Lopez read Dr. Best's report. Thus, if Plaintiff's supervisors or coworkers regarded Plaintiff as disabled even after Ms. Lopez read Dr. Best's report, their biases may be imputed to Defendant if those biases influenced Defendant's adverse employment actions. It is their actions that appear to have ultimately led to Plaintiff's termination. Thus, viewing the facts in the light most favorable to Plaintiff, a reasonable juror could find that Defendant regarded Plaintiff as disabled.

    **2. Qualified Individual**

        a. **Standards**

The second prong of a *prima facie* case under the ADA is whether the employee is a qualified individual. To be a "qualified individual" under the ADA, a disabled person generally must be able to perform the "essential functions" of his or her job "with or without accommodation." 42 U.S.C. § 12111(8). In a "regarded as" case, however, the plaintiff must show an ability to perform the essential job functions *without* reasonable accommodation.

PAGE 16 – OPINION AND ORDER

*Kaplan v. City of N. Las Vegas*, 323 F.3d 1226, 1232-33 (9th Cir. 2003) (holding as a matter of first impression that "there is no duty to accommodate an employee in an 'as regarded' case" and thus the employee must be able to perform the essential functions without accommodation); *see also Taylor v. Health*, 675 F. App'x 676 (9th Cir. 2017) ("To satisfy the 'qualified individual' prong in a 'regarded as' disabled case, Taylor must make a prima facie showing that she was able to perform the essential functions of the job without accommodation."). The employee bears the burden of demonstrating that he or she is a qualified individual and can perform the essential functions of the job.

The employer bears "the burden of production in establishing what job functions are essential as much of the information which determines those essential functions lies uniquely with the employer." *Samper*, 675 F.3d at 1237 (quotation marks omitted). A job's essential functions are the "fundamental job duties of the employment position the individual with the disability holds or desires" and "does not include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). A job duty may be an essential function because the performance of that duty is the reason the position exists or because only a limited number of employees are available to perform that duty. 29 C.F.R. § 1630.2(n)(2). "[C]onsideration shall be given to the employer's judgment as to what functions of the job are essential." 42 U.S.C. § 12111(8). Additionally, the "[w]ork experience of past incumbents in the job" and "[t]he consequences of not requiring the incumbent to perform the function" are considered when determining the essential functions of a position. 29 C.F.R. § 1630.2(n)(3).

### b. The Essential Functions of Plaintiff's Job

Defendant offers the general job description for a journeyman electrician as evidence of the essential functions of Plaintiff's position. The description lists several examples of a journeyman electrician's typical work, including that he or she "[i]nstalls, maintains,

PAGE 17 – OPINION AND ORDER

troubleshoots, and repairs a variety of electrical and instrumentation equipment" and "[e]nsures that repairs and installations are safe and operated properly[.]" The description also requires that he or she can "communicate effectively; work effectively with co-workers in a diverse workforce, and respond appropriately to question/concerns from other employees and the public[.]"

Plaintiff agrees with Defendant's definition of the essential functions. Plaintiff's briefing does not raise any dispute regarding Defendant's job description and does not provide any contradictory evidence.[6] At oral argument, Plaintiff accepted Defendant's definition of the essential functions of Plaintiff's job.

### c. Whether Plaintiff Could Perform the Essential Functions

Plaintiff points to Defendant's reports of her "odd" behavior as evidence that her depression impaired her ability to interact well with others. This evidence, however, is inconsistent with Plaintiff's argument that she is a "qualified individual" who can perform the essential functions of her job without accommodation, for purposes of Plaintiff's "regarded as" theory. In other words, Plaintiff's concession regarding the essential functions of her job in conjunction with her assertions regarding her inability to interact with others defeats her arguments that there is a genuine issue of material fact on her "regarded as' claim. Plaintiff concedes that an essential function of her position is to "communicate effectively" and "work effectively" with her coworkers. Based on Plaintiff's own assertions and contention that she cannot interact well with others, there is no genuine issue on whether Plaintiff is a qualified

---

[6] Even though Plaintiff failed to dispute this fact in her brief and the Court could have deemed the fact as admitted, the Court provided Plaintiff with an additional opportunity to address this fact during oral argument. *See* Fed. R. Civ. P. 56(e)(1)-(2).

individual under the ADA for purposes of her "regarded as" claim, and no reasonable juror could conclude that Plaintiff is a qualified individual.

## C. "Fitness for Duty" Evaluation

The ADA prohibits an employer from requiring a medical examination unless the "inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). The business necessity standard is "quite high" and the defendant bears the burden of proof. *Cripe v. City of San Jose*, 261 F.3d 877, 890 (9th Cir. 2001). The business necessity standard may be met even if the employee's work performance has not declined, if the employer "is faced with significant evidence that could cause a reasonable person to inquire as to whether an employee is still capable of performing his job." *Brownfield v. City of Yakima*, 612 F.3d 1140, 1146 (9th Cir. 2010) (quoting *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 811 (6th Cir. 1999)). "[P]rophylactic psychological examinations can sometimes satisfy the business necessity standard," but courts "must be keen to guard against the potential for employer abuse of such exams." *Id.* The employee's behavior must cast genuine doubt as to whether the employee can perform job-related functions. *Id*. To justify examination, the behavior "cannot be merely annoying or inefficient." *Id.*

Defendant asked Plaintiff to submit to a "fitness for duty" examination during her paid administrative leave. In a letter to Dr. Best, Ms. Lopez stated that Plaintiff's behavior caused her "managers and coworkers to be concerned for their personal safety, as well as the City to have concerns about Ms. Haggard's mental fitness for work." Ms. Lopez describes several examples of Plaintiff's "odd" behavior. Most notable is the threatening "finger gun" that Plaintiff directed at a coworker, including Plaintiff's gesture of "pulling the trigger." Ms. Lopez also describes Plaintiff's tendency to interpret ordinary interactions as retaliatory. Plaintiff does not generally dispute the accuracy of these events, but only Defendant's interpretation of Plaintiff's actions.

PAGE 19 – OPINION AND ORDER

Even if Plaintiff believed that he "finger gun" and "pulling the trigger" gestures were made in jest, for example, those actions gave rise to Defendant's reasonable concern that Plaintiff might be a safety threat to coworkers and, thus, unfit to perform her job. In light of Plaintiff's series of concerning behavior, no reasonable juror could conclude that the "fitness for duty" evaluation required of Plaintiff by Defendant was not a business necessity and not job-related. Thus, requiring Plaintiff to submit to this evaluation does not violate the ADA.

## CONCLUSION

Defendant City of Portland's Second Motion for Partial Summary Judgment (ECF 48) is GRANTED. All that remains for trial is Plaintiff's claim of retaliation in violation of Title VII of the Civil Rights Act of 1964. The parties are directed to contact the Courtroom Deputy to schedule trial.

**IT IS SO ORDERED**.

DATED this 20th day of July, 2018.

> */s/ Michael H. Simon*
> Michael H. Simon
> United States District Judge