IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **HEATHER KOWITZ**, | Case No. 3:16-cv-598-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CITY OF PORTLAND**, | |
| Defendant. | |

Heather Kowitz. Plaintiff *Pro Se*.

Anne M. Milligan and Ryan C. Bailey, Deputy City Attorneys, OFFICE OF CITY ATTORNEY, 1221 SW Fourth Avenue, Suite 430, Portland, OR 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Heather Kowitz ("Plaintiff") asserts in her Amended Complaint two claims against Defendant, the City of Portland ("Defendant"). The Court previously granted Defendant's motion for partial summary judgment against Plaintiff's claim of disability discrimination and retaliation under Title I of the Americans with Disabilities Act ("ADA"). Defendant now moves for summary judgment against Plaintiff's remaining claim, for retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. 2000(e)(3), and her request for punitive damages. For the reasons stated below, Defendant's motion is granted.

**STANDARDS**

A.  **Motion for Summary Judgment**

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

B.  **Retaliation under Title VII**

Title VII prohibits an employer from "discriminat[ing] against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful practice" by Title VII. 42 U.S.C. 2000e-3(a). To state a *prima facie* claim for retaliation under Title VII, an employee must show that (1) he or she engaged in a protected activity; (2) he or she suffered an adverse employment action; and (3) there is a causal link between the two. *See, e.g.*, *Dawson v. Entek Intern.*, 630 F.3d 928, 936 (9th Cir. 2011). The required causation for Title VII retaliation is "but for" causation, requiring "proof that the unlawful retaliation would not have occurred in the

absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

The Ninth Circuit analyzes Title VII retaliation claims under the *McDonnell Douglas*[1] burden-shifting framework. *Dawson*, 630 F.3d at 936. Accordingly, if an employee establishes the three elements to her *prima facie* claim, the burden then shifts to the employer, who must offer evidence that it had a legitimate, nondiscriminatory reason for the challenged action. *Id.* If the employer satisfies its burden, the burden then shifts back to the employee to show that the employer's proffered explanation is mere pretext for impermissible discrimination. *Id.*

## BACKGROUND

Plaintiff, a self-identified lesbian, began work for Defendant as a journeyman electrician in November 2013. On August 15, 2014, Plaintiff orally complained to Defendant's Human Resources ("HR") department that she experienced workplace discrimination because of her gender, sexual orientation, and status as a veteran. Defendant's HR department representative Kenneth Carter emailed Plaintiff to set up a meeting and initiate an investigation into her claims. On September 10, 2014, Plaintiff met with Mr. Carter. Plaintiff later raised concerns with Mr. Carter's handling of the investigation, claiming that he shared confidential information, asked Plaintiff "trick questions," and accused her of contradicting herself. On September 19, 2014, Plaintiff submitted a complaint to the Oregon Bureau of Labor and Industry ("BOLI") claiming she was subjected to workplace sexual orientation discrimination, a hostile work environment, and retaliation.

In response to Plaintiff's concerns with Mr. Carter, Defendant's employee Elizabeth Lopez took over the investigation into Plaintiff's complaints. Ms. Lopez interviewed Plaintiff on

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).

several occasions, and also interviewed 18 of Plaintiff's coworkers. Throughout the investigation, Plaintiff's co-workers voiced concerns about Plaintiff's intimidating and inappropriate behavior in the workplace. They reported that they observed Plaintiff walking directly at them in narrow hallways without moving to the side and making animal-like grunting noises while walking in circles. One co-worker complained that Plaintiff yelled at him over the telephone in the middle of the night because she could not find the job to which she was assigned. Another reported that Plaintiff formed a "finger gun" gesture with her hand, pointed at him, and mimicked pulling the trigger.

In early October 2014, Plaintiff had a negative interaction with a senior supervisor, Chief Engineer Steve Townsen, and was placed on administrative leave for the remainder of the day. On October 17, 2014, Defendant placed Plaintiff on paid administrative leave pending an investigation concerning her behavior during the prior months. The previous day, BOLI dismissed Plaintiff's discrimination complaint.

Defendant also required that Plaintiff participate in a "fitness for duty" psychological examination to determine whether she was fit for work. On November 7, 2014, Dr. Suzanne Best conducted the examination. Defendant received Dr. Best's full report on November 24, 2014, which indicated that Plaintiff was fit for work, but would benefit from working in collaboration with others and under a different supervisor. On December 17, 2014, Ms. Lopez reported the findings of her investigation, concluding that Plaintiff's complaints to HR about discrimination in the workplace were unsubstantiated.

Shortly after Plaintiff returned to work on January 2, 2015, Plaintiff was issued a proposed 40-hour suspension for the inappropriate and intimidating behavior reported before her leave. Plaintiff responded in writing to the proposed suspension and disputed Defendant's

interpretation of her actions. Defendant suspended Plaintiff without pay from February 3-9, 2015.

Throughout January and February, Plaintiff's supervisor Dan Passmore reported several instances of incompetence, insubordinate behavior, dishonesty, and inadequate job performance by Plaintiff. These instances include: (1) installing an average of one sign per day when an average sign installation takes only two hours; (2) failing to comply with lawful directives from a supervisor; (3) reporting inaccurate timecards; (4) removing a part-time restriction sign that resulted in creating a substantial risk of personal injury or damage to property; and (5) servicing a junction box that resulted in an electrical outage in North Portland. Plaintiff responded in writing, disputing the accuracy of the reports. On January 20, 2015, Plaintiff filed a second complaint with BOLI.

The next day after Plaintiff returned from her suspension, she was placed on a second period of paid administrative leave pending an investigation of alleged inadequate performance, occurring after her return to work in January 2015. As a result of this investigation, Defendant concluded that despite repeated attempts at correction and coaching, Plaintiff was not adequately performing her job. On March 24, 2015, Defendant terminated Plaintiff's employment. In the termination letter sent to Plaintiff, she was informed that the discharge was due to inadequate job performance, dishonesty, and insubordination, occurring after her return to work in January.

Plaintiff filed this lawsuit in April 2016, alleging that Defendant engaged in (1) unlawful disability discrimination under the ADA and (2) unlawful retaliation under Title VII. On July 20, 2018, the Court dismissed Plaintiff's first claim, alleging disability discrimination. *Kowitz v. City of Portland*, 2018 WL 3521394 (D. Or. 2018) (also referred to as "ADA SJ Opinion"). In reaching its conclusions, the Court found that Plaintiff was not a "qualified

individual" under the ADA, that she could not perform the essential duties of her job without accommodation as required for being "regarded-as" having a disabling impairment, and that the fitness for duty examination was justified as a legitimate business necessity due to Defendant's "reasonable concern" that Plaintiff might pose a "safety threat to coworkers." *Id.* at *8-9. On November 18, 2017, Defendant filed the present motion, seeking to dismiss Plaintiff's retaliation claim under Title VII.

## DISCUSSION

Defendant asserts that Plaintiff cannot make out a *prima facie* case for retaliation under Title VII. Defendant argues that Plaintiff's deposition testimony, concessions made in her responsive pleadings, and job performance during her final months at work contradict her claim that adverse employment actions were taken in retaliation for her August and September 2014 sexual orientation discrimination complaints to HR and BOLI. Defendant also contends that the Court's ADA SJ Opinion forecloses several issues relating to Plaintiff's Title VII retaliation claim. Defendant further argues that even if Plaintiff could make out a *prima facie* case, there is no genuinely-disputed material issue of fact that Defendant's articulated non-discriminatory reasons were not pretext. Finally, Defendant argues that Plaintiff's claim for punitive damages is prohibited by statute. Because Plaintiff is proceeding *pro se*, the Court liberally construes her filings and gives her the benefit of any reasonable doubt, *see Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010), in addition to viewing the facts in the light most favorable to her as the non-moving party.

**A. Title VII claim.**

As discussed above, to demonstrate a *prima facie* case of retaliation, Plaintiff must show that she engaged in a protected activity, was subjected to an adverse employment action, and that there is causal link between the two.

1. **Protected activity**

The parties do not dispute that Plaintiff engaged in protected activity when she complained to HR in August of 2014 and to BOLI in September of 2014 about workplace harassment and unlawful employment practices, including sexual orientation discrimination. The first element of Plaintiff's *prima facie* claim is satisfied.

2. **Adverse Employment Action**

Plaintiff asserts several adverse employment actions, including denial of training opportunities, denial of tuition reimbursement, denial of overtime, being placed on administrative leave in 2014, being required to attend the fitness for duty examination, being given a 40-hour suspension in 2015, being placed on paid leave in 2015, and being terminated. The Court addresses each claimed adverse employment action in turn.

Regarding Plaintiff's claimed denial of training opportunities, Plaintiff asserts that she was denied Cardiopulmonary Resuscitation ("CPR") and Commercial Driver's License ("CDL") training as well as tuition reimbursement for future classes. She also claims that she was not given full new-employee orientation upon being hired and while on probation. Neither CPR nor CDL training is required for Plaintiff's job position. Plaintiff provides no evidence that other electricians were given CDL training. Additionally, CPR training is given only every two years, and Defendant provides uncontradicted evidence that this training was not scheduled to be given to electricians until February 2015, during Plaintiff's second period of paid leave. Failure to provide Plaintiff with training that was not provided to other electricians is not an adverse employment action because it would not be "reasonably likely to deter employees from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000).

Regarding Plaintiff's claimed lack of training immediately upon her being hired, that occurred before Plaintiff filed her HR and BOLI complaints. Accordingly, failure to provide that training could not have been in retaliation to Plaintiff's making those complaints.

Regarding Plaintiff's claimed desire for tuition, Plaintiff did not attend any classes, did not request funding or reimbursement to attend any specific classes that was denied, and was not denied reimbursement for tuition. Her preferences regarding future tuition are merely aspirational and were never concrete or even presented to Defendant. Accordingly, there was no adverse action taken relating to future classes or tuition. There was no action taken at all.

Regarding Plaintiff's alleged failure to receive overtime, Defendant provided uncontradicted evidence that no electrician was given scheduled overtime during the relevant time period, except for one day in which Plaintiff was absent when employees were signing up for overtime and one day immediately after Plaintiff's return from her leave of absence in which only two of the nine electricians were able to obtain overtime. Defendant, thus, argues that Plaintiff does not demonstrate any disparate failure to provide her with overtime. In response, Plaintiff raises a new claim for discriminatory provision of overtime throughout her employment and not simply after she made her Title VII complaints. This claim was not alleged in Plaintiff's Amended Complaint and may not be raised in response to a summary judgment motion. *See, e.g.*, *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) (finding that when allegations are not in the complaint, "raising such claim in a summary judgment motion is insufficient to present the claim to the district court"); *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.") (quoting *Fleming v. LindWaldock & Co.*, 922 F.2d 20, 24 (1st Cir.1990)); *Pickern v. Pier I Imports (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir.

2006) (noting that new issues raised in response to summary judgment were not appropriate for consideration). Moreover, Defendant provides uncontradicted evidence that when overtime was available, Plaintiff received more scheduled overtime than other electricians and thus Plaintiff's new claim would not survive consideration on the merits. Because Plaintiff received scheduled overtime at the same level as other electricians after she filed her discrimination complaints, Defendant's conduct related to overtime would not be reasonably likely to deter future protected conduct and thus did not constitute an adverse employment action.

Defendant does not directly dispute that placing Plaintiff on paid administrative leave, requiring her to attend a fitness for duty examination, or suspending her were adverse employment actions. Further, Defendant concedes that terminating Plaintiff was an adverse employment action. Defendant, however, argues that Plaintiff fails to show the requisite causal link for those actions. Although Plaintiff's termination and suspension were clearly adverse employment actions, the law is less settled on the other two actions. *Compare Parker v. Arizona*, 2013 WL 3286414, at *9 (D. Ariz. June 28, 2013) ("The State implicitly concedes that the placement on administrative leave was an adverse action for purposes of both sets of claims. This is with good reason. Although it is debatable whether paid administrative leave would always represent adverse action, given that Plaintiff was required to remain in her residence during each work day while on leave, there is no doubt that this was the type of 'change[ ] in work schedule[ ]' that constitutes adverse action under Ninth Circuit precedent." (citing *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000) and *Dilettoso v. Potter*, 2006 WL 197146, at *8 (D. Ariz. Jan.25, 2006))), *with Pickens v. Shinseki*, 2012 WL 947378, at *5-6 (D. Or. Mar. 20, 2012) (finding that placing someone on paid administrative leave and requiring a fitness for duty examination are not adverse employment actions (citing *Singletary v. Mo. Dep't of Corr.*, 423

PAGE 9 – OPINION AND ORDER

F.3d 886, 891-92 (8th Cir. 2005) and *Baker v. Potter*, 2005 WL 843169, at *23 (N.D. Ill. Jan. 20, 2005))); *Lewitt v. City of Hermosa Beach*, 2010 WL 11507459, at *10 (C.D. Cal. May 25, 2010) ("The Court finds that the Police Department's act of placing plaintiff on paid administrative leave while they were in the process of reinstating him does not constitute an adverse action."); *Page v. Jefferson Transit Auth.*, 2009 WL 2057045, at *11 (W.D. Wash. July 15, 2009) ("Plaintiff points to no authority supporting the position that an employer's requirement that an employee submit to a fitness for duty examination is an adverse employment action. Placing an employee on paid administrative leave pending the results of an psychological fitness for duty examination is not an adverse employment action." (citing cases)).

Because Defendant does not dispute that placing Plaintiff on paid administrative leave or requiring her to attend a fitness for duty examination were adverse employment actions, for purposes of this motion the Court assumes without deciding that they were adverse actions. The Court thus considers whether Plaintiff has demonstrated a genuine issue of material fact on the requisite "but for" causal link between Plaintiff's protected activities and the adverse employment actions of requiring a fitness for duty examination, placing Plaintiff on paid administrative leave in 2014, suspending Plaintiff for 40 hours in 2015, placing Plaintiff on paid administrative leave in 2015, and terminating Plaintiff.

### 3. Causation

Causation can be inferred from the proximity in time between the protected activity and the alleged retaliatory act. *See Howard v. City of Coos Bay*, 871 F.3d 1032 (9th Cir. 2017). Timing alone, however, is not sufficient in every case; unless the temporal proximity is "very close" in time, evidence other than timing is required to prove causation. *Id.*

Defendant's alleged adverse employment actions occurred anywhere between one and seven months after Plaintiff filed her BOLI complaint in September 2014 (the latest-occurring

PAGE 10 – OPINION AND ORDER

protected activity by Plaintiff). Although the timing of Defendant's actions following Plaintiff's complaints is easily within the time frame that can support an inference of causation, under the facts of this case, the Court finds that it cannot sufficiently do so without additional evidence. *See Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273-74 (2001) (citing with approval cases finding that three and four months cannot support an inference of causation without additional evidence); *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1035 (9th Cir. 2006) (affirming the district court's determination that an eight-month period was "too great to support an inference" that an employee's "complaints caused his termination").

The earliest alleged adverse actions occurred in October 2014, one month after Plaintiff filed her BOLI complaint. These actions were placing Plaintiff on paid leave and requiring her to undergo a fitness for duty psychological examination. The Court previously concluded, however, that Defendant's request for Plaintiff to submit to the fitness for duty examination was job related and a business necessity because it was motivated by Defendant's "reasonable concern" that Plaintiff posed a "safety threat to coworkers." *Kowitz*, 2018 WL 3521394, at *9. Because Plaintiff's leave was issued for Plaintiff to undergo the requested examination, the same reasoning applies to placing Plaintiff on the October 2014 paid administrative leave. The Court notes, however, that Plaintiff was not returned from leave for more than one month after the examination was completed and the doctor issued her final report on November 24, 2014, which found that Plaintiff was fit for duty. Plaintiff asserts that she was not returned to work until January 2, 2015, after her attorney intervened and threatened legal action.

The continuation of Plaintiff's leave after the doctor found Plaintiff fit for duty does not fall under the Court's original conclusion finding that the leave was motivated by legitimate safety concerns. It thus requires further analysis. The doctor issued the final report on

November 24, 2015, two months after Plaintiff filed her BOLI complaint. The leave was initiated for a legitimate purpose, however, and Plaintiff must show more than mere temporal proximity to carry her burden.

Similarly, the other alleged adverse employment actions require more than temporal proximity. Defendant delivered the 40-hour suspension to Plaintiff on January 2, 2015, nearly five months after Plaintiff filed her complaint to BOLI (although it was not put into effect until February 2015). Her second paid administrative leave began on February 10, 2015, nearly six months after her BOLI complaint was filed and her termination was in late March, seven months after her BOLI complaint.

For these adverse employment actions, the Court finds that there is no genuine dispute of material fact relating to causation. Plaintiff asserts in response to Defendant's motion for summary judgment that Defendant's 2015 conduct was done in retaliation for Plaintiff's sexual orientation discrimination complaint to BOLI. The record indicates otherwise. The evidence shows that Plaintiff's suspension was motivated by the same concerning behavior that prompted Plaintiff's 2014 leave and psychological examination. The discipline was placed on hold during her administrative leave and thus issued to her on her first day back.[2] The record also shows that Plaintiff's extended 2014 paid administrative leave, 2015 paid administrative leave, and termination, if there are factual issues regarding the legitimate reasons articulated by Defendant, support at most an ADA "regarded as" discrimination claim, but not a claim under Title VII.[3]

---

[2] Although the proposed suspension was issued to her on her first day back, the administrative process took approximately one month and the suspension was not effectuated until February 3, 2015.

[3] The Court granted summary judgment against this claim because Plaintiff conceded that she could not perform the essential functions of her job, which is a requirement for such a claim.

The record and Plaintiff's testimony are inconsistent with her Title VII retaliation theory. Plaintiff's testimony regarding her suspension and her treatment at work after she returned focused on discrimination and retaliation for actual or perceived disability and how her co-workers and supervisors treated her like she was "crazy." Plaintiff did not discuss any treatment that was purportedly because of her sexual orientation complaints. Other evidence in the record, discussed in detail in the ADA SJ Opinion, also demonstrates that the focus of Plaintiff, her co-workers, and her supervisors was on Plaintiff's perceived disability and not her complaints of alleged sexual orientation or gender discrimination.

Plaintiff points to no evidence in the record that supports that any conduct by Defendant was in retaliation for or because of Plaintiff's complaints to HR or BOLI regarding sexual orientation or gender discrimination. Such evidence might include evidence that Defendant made statements in opposition to her HR or BOLI complaints, that Defendant made threats to Plaintiff after she filed her complaints, or that her supervisors or co-workers hold or have demonstrated some animosity toward Plaintiff's sexual orientation.[4] Further, courts have "no independent duty 'to scour the record in search of a genuine issue of triable fact,' and may 'rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.'" *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010) (quoting *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996)). Nonetheless, the Court has reviewed the record and did not find evidence supporting Plaintiff's contentions.

---

[4] Plaintiff cites to a comment her supervisor made referring to her clothing as a "Canadian Tuxedo" as evidence of "lesbian-baiting." The term (meaning an outfit consisting of jeans and a denim jacket), however, is generally understood to be gender-neutral. In fact, the media has recently praised the style as a fashion-forward trend. *See Canadian Tuxedo*, DICTIONARY.COM, https://www.dictionary.com/e/fashion/canadian-tuxedo/ (last visited Jan. 31, 2018) ("Although the Canadian tuxedo is often ridiculed, . . . media like Esquire and Vogue in the 2010s have praised the outfit as celebrities took to sporting the denim-on-denim look.").

The record also shows that although BOLI dismissed Plaintiff's complaint, finding insufficient evidence, Defendant investigated Plaintiff's claims of sexual orientation and gender discrimination. HR interviewed 19 people regarding Plaintiff's complaint. Defendant also replaced both the HR representative and the union representative when Plaintiff complained about the originally-assigned persons on her investigation. The record does not support a reasonable inference that Defendant's actions were motivated by Plaintiff's BOLI or HR complaints. Accordingly, there is no genuine dispute whether Plaintiff's sexual orientation and gender discrimination complaints were the "but-for" cause of Defendant's adverse employment actions. Plaintiff fails to make out a *prima facie* case for Title VII retaliation, and Defendant's motion for summary judgment is granted.

**B. Punitive Damages**

Because the Court grants Defendant's motion for summary judgment, there are no claims remaining in this case and this case is dismissed. Defendant's motion relating to Plaintiff's claim for punitive damages is moot.

## CONCLUSION

Defendant City of Portland's Third Motion for Summary Judgment (ECF 85) is GRANTED. This case is dismissed with prejudice.

**IT IS SO ORDERED**.

DATED this 11th day of February, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge